**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **LINDA M. KING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:15-cv-02269-STA-dkv** |
| | ) | |
| **AUTOZONERS, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is the Defendant Autozoners, LLC's Motion for Summary Judgment (ECF No. 30) filed on June 30, 2016. Plaintiff Linda M. King has filed a response in opposition, and Defendant has filed a reply brief. The parties having completed their briefing, Defendant's Motion is now ripe determination. For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff's Complaint (ECF No. 1) alleges claims against Defendant for race and gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), all arising out of Plaintiff's former employment with Defendant. Defendant now seeks judgment as a matter of law on all of Plaintiff's claims for relief. Pursuant to Local Rule 56.1(a), Defendant has prepared a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute."[1] A fact is material if the fact "might affect the outcome of the lawsuit

---

[1] Local R. 56.1(a).

under the governing substantive law."[2]   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]   For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular parts of the materials in the record and show that the materials fail to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact.[4]

As the non-moving party, Plaintiff is required to respond to Defendant's statements of fact "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed."[5]   Additionally, Plaintiff may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[6]   Where Plaintiff asserts that a genuine dispute of material fact exists, Plaintiff must support her contention with a "specific citation to the record."[7]   If Plaintiff fails to demonstrate that a fact is disputed or simply fails to address Defendants' statement of fact properly, the Court will "consider the fact undisputed for purposes" of ruling on the Motions.[8]   Under Rule 56 of the Federal Rules of Civil

---

[2] *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986)).

[3] *Anderson,* 477 U.S. at 248.

[4] Fed. R. Civ. P. 56(c)(1).

[5] Local R. 56.1(b).

[6] Fed. R. Civ. P. 56(c)(2).

[7] Local R. 56.1(b).

[8] Fed. R. Civ. P. 56(e)(2); *see also* Local R. 56.1(d) ("Failure to respond to a moving

Procedure, the Court "need consider only the cited materials" but has discretion to "consider other materials in the record."[9] The Court finds that for purposes of Defendants' Motion for Summary Judgment, there is no genuine dispute as to the following material facts, unless otherwise noted.[10]

## I. Plaintiff's Employment History with AutoZone

Plaintiff began working for AutoZone in 1995 as a Merchandising Pro, a job that involved the setup of retail stores using plan-o-grams. (Def.'s Statement of Undisputed Fact ¶ 1.) Plaintiff later transferred to another position at AutoZone, working in Alarm Central where her job was to monitor store alarms and surveillance video. (*Id.*) Plaintiff began working in AutoZone's Risk Management department in 2002. (*Id.* ¶ 2.) Plaintiff's position in the Risk Management department as of 2013 was Claims Coordinator. (*Id.* ¶ 3.)

As a Claims Coordinator, Plaintiff had the following job duties: (1) primary responsibility for the preparation of the Corporate Accident Review Board ("CARB") report; (2) tractor trailer subrogation work, which involved recovering money for AutoZone from third-party insurers when the drivers covered by those insurers collided with AutoZone-owned tractor trailers; (3) reviewing and reconciling any payments over $5,000 that appeared on a particular

party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment.").

[9] Fed. R. Civ. P. 56(c)(3).

[10] On June 13, 2016, Defendant filed a Motion to Strike an errata sheet Plaintiff had attached to the transcript of her March 2016 deposition testimony. According to Defendant, Plaintiff improperly attempted through the errata sheet to alter the substance of her answers during the deposition. As a practical matter, neither party has cited or relied on the facts alleged in the errata sheet to support a position about the undisputed facts at summary judgment. Under Local Rule of Court 7.2, Plaintiff had 14 days to respond to Defendant's Motion to Strike, making her response due no later than June 28, 2016. To date Plaintiff has not responded. For good cause shown, the Motion to Strike is **GRANTED**.

Gallagher Bassett report (AutoZone's third-party administrator and provider of claims management services); and (4) miscellaneous clerical tasks, including answering phone calls, supplying key chains and decals for AutoZone-owned vehicles, printing FedEx labels, paying rental car claims, and dropping off disposable cameras for processing (AutoZone uses the cameras to document accidents involving AutoZone-owned vehicles). (*Id.* ¶ 4.) Plaintiff adds that she also completed query courses to assist her with preparing data reports and that she "contacted the necessary vendors to help with data." (Pl.'s Resp. to Def.'s Statement ¶ 4.) The CARB committee met (and meets) every Thursday to review the prior week's accidents involving AutoZone-owned vehicles. (Def.'s Statement of Undisputed Fact ¶ 5.) Plaintiff's performance reviews indicate that she generally met AutoZone's expectations. (*Id.* ¶ 6.)

## II. History and Structure of AutoZone's Risk Management Department

The purpose of the Risk Management department is to minimize the total cost of risk to AutoZone, which requires understanding financial trends and analysis of claims-related information. (*Id.* ¶ 7.) The department handles claims involving workers' compensation, automobile liability, general liability, and property damage. (*Id.* ¶ 8.) Carmen Haskell ("Haskell") managed the Risk Management department from 2000 until April 2012. (*Id.* ¶ 9.) Various employees in the Risk Management department complained about Haskell's behavior and treatment they received from Haskell. (*Id.* ¶ 10.) These employees included Linda Hawks (a white female over forty years old), Karen Tice (a white female over forty years old), Misti Doose (a white female under forty years old), Crystal Hubbard (an African-American female over forty years old), and Don Stonecipher (a white male over forty years old). (*Id.* ¶¶ 11, 12.)[11] Haskell was also verbally abusive toward AutoZone customers. (*Id.* ¶ 13.) Plaintiff adds that

---

[11] Plaintiff did not respond to Defendant's Statement of Undisputed Fact ¶ 11. Therefore, the Court finds the fact to be undisputed for purposes of summary judgment.

she went to the Legal Department to complain about Haskell and told a person named Allison that she intended to pursue legal action if management would not take action to address Haskell's behavior. (Pl.'s Resp. to Def.'s Statement ¶ 10.)

Several Risk Management department employees—including Frances Littlejohn (an African-American female over forty years old), Tice, Hubbard, Cherie McLeary ("McLeary") (a white female over forty years old), Stonecipher, and Hawks were interviewed in 2011 as part of an investigation of Haskell. (Def.'s Statement of Undisputed Fact ¶ 14.) As a result of the investigation, Haskell received a corrective action notice and was subsequently placed on a Performance Improvement Plan ("PIP") in 2012. (*Id.* ¶ 15.) Haskell left AutoZone in April 2012 after being placed on the PIP. (*Id.* ¶ 16.) Steve Beussink ("Beussink"), AutoZone's Assistant Treasurer, served as the interim head of the Risk Management department between April 2012 (when Haskell left) and January 2013 (when Christopher Brown took over). (*Id.* ¶ 17.) Plaintiff adds that after Haskell resigned, Plaintiff observed significant tension in the Risk Management department and felt that Beussnik had "disdain" for her. (Pl.'s Resp. to Def.'s Statement ¶ 10.)

Christopher Brown has an MBA and had developed an extensive background in analytics and process improvements. (Def.'s Statement of Undisputed Fact ¶ 18.) Brown came to AutoZone in 2005 as an associate financial analyst and receiving a series of promotions after that time. (*Id.*) As Plaintiff points out, Brown had no prior experience in risk management. (Pl.'s Resp. to Def.'s Statement ¶ 18.) When Brown took over as Risk Management manager in January 2013, he "wanted to take a look at the whole risk management department and evaluate what's working, what's not working and [most] importantly what [he] could improve on to be able to drive down the total cost of risk" for AutoZone. (Def.'s Statement of Undisputed Fact ¶

19.)  For that reason, Brown spent his first six months as Risk Management Manager "completely absorbing and trying to learn as much [he] could about the department, what various people did, what various vendors did, how they played in and what action they could play on reducing the total cost of risk" to AutoZone.  (*Id.* ¶ 20.)  Brown also "from day one . . . was evaluating what's appropriate . . . what might not be appropriate, and what [sic] best to use the limited resources that" the Risk Management department had.  (*Id.* ¶ 21.)  Plaintiff adds that Crystal Hubbard was a team leader in the Risk Management, and yet Brown never met with her about or discussed with her general liability or "the business of it."  (Pl.'s Resp. to Def.'s Statement ¶¶ 19-21.)

After spending the first six months on the job absorbing all of the knowledge that he could, Brown recommended a restructuring of the Risk Management department in June 2013.  (Def.'s Statement of Undisputed Fact ¶ 22.)  During the relevant time period in 2013, the Risk Management department had ten employees, not including Brown:  Doose (Senior Risk Management Analyst), McLeary (Team Lead/Auto Claims), Hubbard (Team Lead/General Liability), Littlejohn (Team Lead/Workers' Compensation), Tice (Senior Workers' Compensation Specialist), Hawks (Workers' Compensation Specialist), Lu McCain (Workers' Compensation Specialist, a white female over forty years old), Sharon Berry (Risk Management Coordinator, an African-American female over forty years old), Curlee Alexander (Senior Claims Liability Adjuster, an African-American male over forty years old), and Plaintiff.  (*Id.* ¶ 23.)  Littlejohn was the direct supervisor for Tice, Hawks, and McCain; Doose was Berry's direct supervisor; Hubbard was Alexander's direct supervisor, and McLeary was Plaintiff's direct supervisor.  (*Id.* ¶ 24.)  All of these employees reported either directly or indirectly to Brown, the Risk Management Manager. (*Id.* ¶ 25.)

**III. Details of the Restructuring of the Risk Management Department in 2013**

Brown's proposed restructuring of the Risk Management department had several components: (1) eliminating Plaintiff's position as Claims Coordinator; (2) promoting Plaintiff's immediate supervisor, McLeary; and (3) hiring an Associate Risk Analyst, a newly created position.  (*Id.* ¶ 26.)  Plaintiff adds that Brown's plan also included the elimination of Hubbard's and Littlejohn's jobs and that both Hubbard and Littlejohn are African American females.  (Pl.'s Resp. to Def.'s Statement ¶ 26.)  Brown did not propose to eliminate any white employee's position or demote any white employee.  (*Id.*)  Brown consulted Beussink and Brian Campbell, AutoZone's Treasurer and Beussink's direct superior, regarding the proposed reorganization; both Campbell and Beussink supported the proposal.  (Def.'s Statement of Undisputed Fact ¶ 27.)  Brown also consulted with Wes Russell, a generalist in AutoZone's Human Resources ("HR") department, regarding the proposed reorganization along with AutoZone's in-house counsel.  (*Id.* ¶ 28.)

According to Defendant, Plaintiff's position was ripe for elimination for a number of reasons: (1) AutoZone's increased focus on analytics, automation, and efficiency within the Risk Management department, (2) the largely clerical nature of Plaintiff's position (much of which overlapped with Berry's duties), and (3) the relatively modest amount of job responsibilities that Plaintiff had, all of which could be absorbed by other members of the department without significant disruption to its operations.  (*Id.* ¶ 29.)  Plaintiff adds that Cheri McLeary, a team lead, assumed a majority of Plaintiff's former responsibilities after her termination and that Max

Moseley, a non-protected employee, took over preparation of the CARB report.  (Pl.'s Resp. to

Def.'s Statement ¶ 29.)[12]

---

[12] Plaintiff disputes Defendant's claim that her job duties were "relatively modest." Plaintiff cites for support two pages from the transcript of her deposition testimony.  The Court finds, however, that Plaintiff's testimony does not establish a genuine dispute about the extent of her duties.  The testimony cited reads as follows:

> Q. It was possible that AutoZone could just divide those duties up and give them to other people in the risk management staff though, correct?
>
> . . .
>
> A. No.
>
> Q. Why was that not possible?
>
> A. It took me 18 years to build what I did, the job that I did. And I did a good job and it wasn't a job that you could do overnight.
>
> Q. That's not what I'm asking.  I'm asking whether they could take your duties and give them to other people on the staff?
>
> A. I don't think so, no.
>
> Q. Why don't you think so?
>
> A. Because no one was capable of doing my job as well as I was.
>
> Q. I'm not asking as well. I'm just asking if it was possible - -
>
> A. No.
>
> Q. - - that they couldn't give the duties out?
>
> A. No.
>
> Q. And why not?
>
> A. Because no one could do my job.

King Dep. 152:10-153:11, Mar. 4, 2016 (ECF No. 30-3).

Plaintiff's testimony amounts only to her subjective opinion about her own capacity and ability to do her job.  A plaintiff's subjective beliefs about her qualifications are insufficient to create a genuine dispute of fact.  *See Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 269

Brown decide to create an Associate Risk Analyst position because of his desire to have "somebody that could pull reports, create queries, design financial models, and be able to effectively communicate what they found as a result of their analysis." (Def.'s Statement of Undisputed Fact ¶ 30.) Brown drafted the job description for the position with the help of Misti Doose, the department's Senior Risk Management Analyst. (*Id.*) Plaintiff asserts in response that she believes Brown's real motivation was to eliminate the jobs of three African American women in the Risk Management department and place a white male under 40 in the newly created position. (Pl.'s Resp. to Def.'s Statement ¶ 30.) The minimum educational requirement for the newly created Associate Risk Analyst position was a bachelor's degree with a preference for a candidate with an MBA. (Def.'s Statement of Undisputed Fact ¶ 31.) Plaintiff's highest level of education is an associate's degree in Nursing. (*Id.* ¶ 32.)

As previously noted, Brown's proposed restructuring also contemplated the elimination of Littlejohn's position (Team Lead – Workers' Compensation) and a demotion for Hubbard (Team Lead – General Liability). (*Id.* ¶ 33.) In Brown's view, Littlejohn was not pushing her subordinates (Tice, Hawks, and McCain) to close claims quickly or meet AutoZone's internal targets, nor was she managing AutoZone's vendor partners effectively. (*Id.* ¶ 34.) As a result, Brown had lost confidence in Littlejohn's ability to lead the workers' compensation team. (*Id.*) Plaintiff adds that Brown never raised any of these concerns with Littlejohn prior to the termination of her employment. (Pl.'s Resp. to Def.'s Statement ¶ 34.) Hubbard was selected for a demotion because Brown had lost confidence in her ability to lead Alexander. (Def.'s

---

(6th Cir. 2010); *Briggs v. Potter*, 463 F.3d 507, 516-17 (6th Cir. 2006). The Court holds then that Plaintiff's testimony does not show that Defendant's description of her job duties as "modest" was inaccurate or genuinely in dispute.

Statement of Undisputed Fact ¶ 35.)  Plaintiff again points out that Brown never discussed the general liability work Hubbard performed with her.  (Pl.'s Resp. to Def.'s Statement ¶ 35.)

Brown ultimately decided to place Littlejohn and Hubbard on PIPs rather than eliminating Littlejohn's position or demoting Hubbard.  (Def.'s Statement of Undisputed Fact ¶ 36.)  Littlejohn responded well to the PIP, and her performance improved markedly over the remainder of 2013.  (*Id.* ¶ 37.)  Littlejohn subsequently retired from AutoZone on good terms after achieving all of the goals set out in the PIP. (*Id.* ¶ 38.)  Hubbard successfully completed the PIP and subsequently decided that she wanted to take a voluntary demotion.  (*Id.* ¶ 39.)  Hubbard later resigned from AutoZone of her own accord. (*Id.* ¶ 40.)  Plaintiff adds that Hubbard testified that she asked for the demotion and later resigned because she felt AutoZone was trying to find ways to get rid of her.  (Pl.'s Resp. to Def.'s Statement ¶ 40.)

## IV. Elimination of Plaintiff's Position in September 2013

Before Plaintiff's position was eliminated, Brown worked with AutoZone's HR department to "see if there was anything available that would be a good fit for [Plaintiff] and that's when Wes [Russell in HR] . . . looked inside the organization to see if there was any fit." (Def.'s Statement of Undisputed Fact ¶ 41.)  Russell did not find any positions for which Plaintiff would have been suited.  (*Id.*)  Russell encouraged Plaintiff to apply for any open position using AutoZone's website and to "contact him with any interest that she might have." (*Id.*)  Plaintiff adds that she was not given an opportunity to search for open positions prior to her termination.  (Pl.'s Resp. to Def.'s Statement ¶ 41.)

Plaintiff's position was eliminated on September 6, 2013, and she was notified of the elimination that day.  (Def.'s Statement of Undisputed Fact ¶ 42.)  Following the elimination of Plaintiff's position, McLeary took over Plaintiff's primary responsibility, the preparation of the

CARB report, for at least six weeks, and took over most of the remainder of Plaintiff's duties on a permanent basis. (*Id.* ¶ 43.) The tractor trailer subrogation work that Plaintiff had performed was placed on hold following the elimination of Plaintiff's position because the work was relatively sparse and not profitable. (*Id.* ¶ 44.) Plaintiff disputes this claim and cites for support McLeary's deposition testimony where she testified that she took over all of Plaintiff's former responsibilities and continues to perform them to this day. (Pl.'s Resp. to Def.'s Statement ¶ 44.) Max Moseley ("Moseley") subsequently took over the preparation of the CARB report in approximately November 2013. (*Id.* ¶ 45.)

## V. Max Moseley

Moseley graduated from Mississippi State University in 2011 with a bachelor's degree in Management and earned an MBA in 2013. (Def.'s Statement of Undisputed Fact ¶ 46.)[13] Moseley started at AutoZone as an Associate Risk Analyst on November 4, 2013. (*Id.* ¶ 47.) Moseley had applied for the position in August or September of 2013 and was hired at end of the October 2013 by Doose. (*Id.*) Plaintiff adds that Moseley had listed on his job application a preferred start date of September 16, 2013, ten days after Plaintiff lost her job, and that Brown was also involved in the decision to hire Moseley. (Pl.'s Resp. to Def.'s Statement ¶¶ 48, 47.) Moseley received initial training from Doose, which included training on pulling queries and setting up loss development triangles. (Def.'s Statement of Undisputed Fact ¶ 48.) Moseley eventually pulled hundreds of queries for various analyses. (*Id.*)

---

[13] Defendant also cites evidence about Moseley's undergraduate GPA (3.97) and graduate GPA (4.0) and his college and grad school honors. (Def.'s Statement of Undisputed Fact ¶ 46.) Plaintiff cites other evidence that during college Moseley was a delivery driver for PIP (unidentified) and worked as a grounds technician at a golf course. The Court notes this evidence for the record. However, it is not clear to the Court why these facts about Moseley academic qualifications and employment history are material to the questions of law presented in Defendant's Motion for Summary Judgment. As discussed more fully below, there is no proof that Moseley was Plaintiff's replacement, and Moseley is not a similarly situated comparator.

Moseley took over the responsibility for a number of reports from Doose, including the hit and reserve forecast, which tracks how much AutoZone pays out on claims and its reserve numbers. (*Id.* ¶ 49.) Moseley manipulates and analyzes the resulting data using pivot tables in Excel. (*Id.*) Moseley also took over the various state filings. (*Id.*) Plaintiff points out that Moseley's primary duty as of February 2014 was the CARB report. (Pl.'s Resp. to Def.'s Statement ¶¶ 48.) Plaintiff also adds that when management informed her of her termination, she was told that a new position was being created and that she did not have the qualifications for the new position. (*Id.* ¶ 49.)

According to Defendant, Moseley improved the CARB report by making it paperless; specifically, he nested PDFs using Adobe Acrobat such that hundreds of pieces of paper no longer had to be printed. (Def.'s Statement of Undisputed Fact ¶ 50.) Moseley can now complete the CARB report in two hours; whereas, it took Plaintiff days to prepare the report each week. (*Id.* ¶ 51.) Plaintiff disputes the claim that it took her days to complete the CARB report and cites her deposition testimony where she stated she could complete the report in about five hours. (Pl.'s Resp. to Def.'s Statement ¶ 51.) While the CARB report in Plaintiff's estimation was over 35% of her job, Moseley was responsible for the CARB report and "[r]oughly 30 [separate] reports" during his first year with AutoZone, not including the ad hoc analyses that he regularly performed. (Def.'s Statement of Undisputed Fact ¶ 52.)

## VI. Plaintiff's Charge of Discrimination

Plaintiff filed a charge of discrimination ("charge") on September 10, 2013; nowhere on the charge is sex discrimination identified or mentioned as one of Plaintiff's allegations. (*Id.* ¶ 53.)

Defendant now seeks judgment as a matter of law on all of Plaintiff's claims for relief. Defendant argues that Plaintiff cannot prove a prima facie case of discrimination on the basis of race, gender, or age. Defendant concedes that Plaintiff is a member of all three protected classes. Defendant further concedes that Plaintiff was qualified for her job and that her termination constitutes an adverse employment action. Plaintiff cannot prove, however, that she was replaced by someone outside of her protected class. Plaintiff claims that Max Moseley, a white male under 40, was her replacement. But the undisputed proof shows that Plaintiff's responsibilities were reassigned to more than one employee. Plaintiff, a Claims Coordinator, and Moseley, an Associate Risk Analyst, had entirely distinct job titles and responsibilities. The only task common to their positions is the preparation of the CARB report. Moreover, Plaintiff has no proof that a similarly situated, non-protected employee received more favorable treatment than she did. Defendant argues that Plaintiff's only true comparator employee in the Risk Management department was Sharon Berry, who like Plaintiff is an African American female over age 40. For these reasons Plaintiff has failed to establish a prima case of discrimination on any protected grounds.

Defendant also seeks summary judgment on Plaintiff's claim for retaliation. Defendant concedes for the sake of summary judgment that Plaintiff engaged in protected activity by complaining about her former manager Carmen Haskell and that Defendant had knowledge of her protected complaints. Plaintiff cannot establish a causal connection between her complaints about Haskell and her subsequent termination. Defendant argues that Plaintiff's theory of retaliation is implausible. Even if Plaintiff did make a complaint, Defendant conducted an investigation and interviewed a number of employees about Haskell. And yet Plaintiff alleges that only she was singled out for retaliation. What is more, more than a year passed between

Haskell's resignation from AutoZone in April 2012 and Plaintiff's termination in September 2013. Plaintiff simply has no proof of any causal connection between her complaints about Haskell and her termination more than a year later.

Defendant argues that even if Plaintiff could carry her burden to establish her discrimination and retaliation claims, she has no proof that Defendant's legitimate reasons for her termination are pretextual. Defendant can show that Brown assumed supervision over the Risk Management department in January 2013 and emphasized analytics, automation, and efficiency. Plaintiff's position entailed only a few responsibilities, all of which were largely clerical in nature. As such, Defendant selected her position for elimination based on legitimate, nondiscriminatory factors. Plaintiff has only her own subjective opinion and disagreement with Defendant's business judgment to show that the proffered reasons for the elimination of her position were pretext. Defendant even admits that Plaintiff's performance reviews were positive. Defendant did not select her position for elimination because Plaintiff had poor performance. Defendant eliminated her position for the legitimate reasons already given. To the extent that Plaintiff cites the fact that Brown's reorganization of the department had adverse effects on three African American employees, Defendant posits that this proof has no relevance to pretext. The Risk Management department has 10 employees total and Brown's proposed reorganization had no impact on two of the African America employees in the department. Defendant contends then that Plaintiff has no proof of pretext.

Finally, Defendant argues that Plaintiff failed to exhaust her administrative remedies for her sex discrimination claim. Plaintiff's charge of discrimination alleged that Defendant had terminated her position on the basis of her race and age. The charge never alleged any claim on the basis of Plaintiff's sex. Therefore, the Court should dismiss all of Plaintiff's claims for relief.

Plaintiff has responded in opposition to Defendant's Motion for Summary Judgment. In support of her discrimination claims, Plaintiff maintains that Max Moseley was her replacement. Plaintiff emphasizes Brown's short tenure as the manager of the Risk Management department and his failure to consult the team leads in the department about his plans to reorganize it. Plaintiff asserts, without citation to any evidence, that Brown wrote the description for the new position he intended to create so as to prevent Plaintiff from being a candidate for the position. Plaintiff also seems to argue that she and Moseley were similarly situated in relevant respects. Plaintiff can show that Moseley like Plaintiff was under Brown's "indirect" supervision and like Plaintiff was responsible for preparing the CARB report. Plaintiff further argues that while Moseley may have also prepared other reports in his new position, Plaintiff could have performed the same tasks with proper training. Plaintiff argues then that this proof is enough to show that Moseley was her replacement.

As for her claim of retaliation, Plaintiff contends that she can make out a prima facie case. Plaintiff asserts that she made a number of complaints about Haskell and that AutoZone management was aware of her complaints. Plaintiff adds that she made complaints to Steve Beussink and that Beussink was involved in the decision to eliminate her job, though Plaintiff cites no evidence for this proposition. With respect to the showing of pretext, Plaintiff argues that genuine disputes exist over how much work she performed and whether there was adequate work for her to do. Plaintiff's argument on this point is not entirely clear. She seems to suggest that because Defendant reassigned her duties to two different employees, this fact somehow shows that there was not a lack of work for Plaintiff. And Defendant's plans for automation do not explain the elimination of Plaintiff's job. McLeary, a supervisory employee, continues to perform all of Plaintiff's former duties. Plaintiff finally argues that Brown's proffered reasons

are not entitled to any credibility because Brown lacked any experience in risk management, Moseley was fresh out of college and had no experience, and Plaintiff had 18 years of experience in risk management and other departments with the company. Therefore, the Court should deny Defendant's Motion for Summary Judgment.

Defendant has filed a reply. Defendant reiterates three main points. First, Plaintiff cannot show that she was replaced. Second, Plaintiff cannot establish a causal connection between her protected activity and her termination. Third, Plaintiff has failed to establish that any of Defendant's proffered reasons for eliminating her job are pretext for discrimination.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide."[15] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party,[16] and the "judge may not make credibility determinations or weigh the evidence."[17] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some

---

[14] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009).

[16] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[17] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

"specific facts showing that there is a genuine issue for trial."[18]  It is not sufficient "simply [to]

show that there is some metaphysical doubt as to the material facts."[19]  These facts must be more

than a scintilla of evidence and must meet the standard of whether a reasonable juror could find

by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[20]  In this

Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his]

asserted causes of action."[21]

When determining if summary judgment is appropriate, the Court should ask "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-side that one party must prevail as a matter of law."[22]  Summary judgment must be entered

"against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial."[23]

## ANALYSIS

The Court holds that Defendants are entitled to judgment as a matter of law on all of

Plaintiff's claims.  The Court considers each claim in turn.

### I. Plaintiff's Abandoned or Waived Claims

---

[18] *Celotex*, 477 U.S. at 324.

[19] *Matsushita*, 475 U.S. at 586.

[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[21] *Lord v. Saratoga Cap., Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[22] *Anderson*, 477 U.S. at 251–52.

[23] *Celotex*, 477 U.S. at 322.

As a procedural matter, Plaintiff has failed to respond to several dispositive arguments raised by Defendant in its opening brief. Specifically, Defendant argued that Plaintiff could not prove a causal connection to support her prima facie claim of retaliation and that Plaintiff had failed to exhaust her administrative remedies as to her claim for sex discrimination. Plaintiff has failed to oppose or in any way respond to Defendant's arguments about her retaliation claim or her failure to exhaust her administrative remedies. In her response brief, Plaintiff focuses her retaliation argument on the fact that she engaged in protected activity and that Defendant had knowledge of her protected activity. But as is clear from Defendant's opening brief, Defendant did not actually contest these facts. More importantly, Plaintiff failed to address Defendant's argument about the lack of a causal connection. Plaintiff's brief does address Defendant's real argument that there is no temporal proximity between her protected activity and her termination and therefore no proof of causation. As for Defendant's exhaustion argument, Plaintiff failed to respond to Defendant's point at all.

"[A] plaintiff is deemed to have abandoned a claim when [she] fails to address it in response to a motion for summary judgment."[24] District courts in this Circuit routinely grant summary judgment as to claims a plaintiff fails to support or address in a response to a motion for summary judgment.[25] Defendant has raised meritorious defense to both Plaintiff's retaliation

---

[24] *Haddad v. Sec'y, U.S. Dept. of Homeland Sec.*, 610 F. App'x 567, 568–69 (6th Cir. 2015) (quoting *Brown v. VHS of Mich., Inc.,* 545 F. App'x 368, 372 (6th Cir. 2013)).

[25] *Burress v. City of Franklin, Tenn.*, 809 F. Supp. 2d 795, 809 (M.D. Tenn. 2011); *Anglers of the Au Sable v. U.S. Forest Serv.,* 565 F. Supp. 2d 812, 839 (E.D. Mich. 2008)*; Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S.D. Ohio 2005); *Kattar v. Three Rivers Area Hosp. Auth.*, 52 F. Supp. 2d 789, 798 n.7 (W.D. Mich. 1999). *See also Clark v. City of Dublin,* No. 05-3186, 2006 WL 1133577, at *3 (6th Cir. Apr. 27, 2006) (where the appellant did not properly respond to the arguments asserted against his ADEA and ADA claims by the appellees in their motion for summary judgment, the appellant had abandoned his ADEA and ADA claims); *Conner v. Hardee's Food Sys.,* No. 01-5679, 2003 WL 932432, at *4 (6th Cir. Mar. 6, 2003) (finding that, "Because Plaintiffs failed to brief the issue before the district court . . .

claim and her sex discrimination claim.   Based on Plaintiff's waiver of these claims and for the reasons stated in Defendant's opening memorandum, the Court holds that Defendant is entitled to judgment as a matter of law on these claims.   Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's retaliation and sex discrimination claims.

## II. Race and Age Discrimination

This leaves Plaintiff's claims for race and age discrimination.   Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual . . . because of [his] race, color, religion, sex, or national origin."[26]   Where as here a plaintiff offers only circumstantial evidence of unlawful discrimination, the Court analyzes the case using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).[27]   Plaintiff bears the initial burden to establish her prima facie case of discrimination by showing that (1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position, and (4) she was either replaced by a person outside of the protected class or was treated differently than similarly situated non-protected employees.[28]

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms,

---

Plaintiffs abandoned their . . . claim."); *Hazelwood v. Tenn. Dept. of Safety*, No. 3:05-cv-356, 2008 WL 3200720, at *8 (E.D. Tenn. Aug. 5, 2008).

[26] 42 U.S.C. § 2000e–2(a)(1).

[27] *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

[28] *Serrano v. Cintas Corp.*, 699 F.3d 884, 892-93 (6th Cir. 2012).

conditions, or privileges of employment, because of such individual's age."[29]   In order to establish her age discrimination claim, Plaintiff must adduce evidence to prove the following elements: (1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination.[30] Just as with her race discrimination claim, Plaintiff can establish this final element with proof of a substantially younger employee replacing her[31] or evidence of a non-protected employees receiving more favorable treatment.[32]

The Sixth Circuit has referred to cases like the one at bar as a reduction in force case and established the following principles to govern them.

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.[33]

---

[29] *Scheick v. Tecumseh Public Schs.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting 29 U.S.C. § 623(a)(1)).

[30] *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).

[31] *Id.* (holding that evidence of a protected employee being replaced by a significantly younger employee supports an inference of age discrimination).

[32] *Grosjean*, 349 F.3d at 340.

[33] *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 537 (6th Cir. 2014) (quoting *Barnes v. GenCorp,* 896 F.2d 1457, 1465 (6th Cir. 1990)).

At summary judgment, Defendant contests only Plaintiff's proof as to the fourth element of each claim, namely, that she was replaced by someone outside of her protected class or alternatively that a similarly situated, non-protected employee received more favorable treatment. Viewing the evidence in the light most favorable to Plaintiff, The Court holds that Plaintiff has adduced no evidence to make either showing and thereby satisfy this element of her race and age discrimination claims. "An employee is replaced only where another employee is hired or reassigned to perform the plaintiff's duties."[34] In other words, "spreading the former duties of a terminated employee among the remaining employees does not constitute replacement."[35] Plaintiff has no proof that another employee was hired to replace her or reassigned to perform her job. The undisputed evidence shows that McLeary, an existing supervisory employee in the Risk Management Department, assumed most of Plaintiff's job duties but continued to perform her own duties. The undisputed evidence further shows that Plaintiff's responsibility for the CARB report was ultimately reassigned from McLeary to an entirely new position in the department, which was filled by Max Moseley.[36] Therefore, Plaintiff has failed to show that a non-protected employee replaced her.

Likewise, Plaintiff has not shown that a similarly situated, non-protected employee received more favorable treatment as part of the reorganization of the department. Plaintiff has

---

[34] *Webb v. ServiceMaster BSC LLC*, 438 F. App'x 451, 454 (6th Cir. 2011) (quoting *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003)).

[35] *Id.* (quoting *Lilley v. BTM Corp.,* 958 F.2d 746, 752 (6th Cir. 1992)).

[36] Plaintiff's arguments about CARB reports are somewhat inconsistent. On the one hand, Plaintiff emphasizes that CARB reports were her primary responsibility, and so the fact that Moseley took over CARB reports effectively made him her replacement. On the other hand, Plaintiff argues that she was so efficient that CARB reports took up only five hours of her full-time work week. That is to say, Plaintiff's primary job task accounted for less one day of her week.

shown that Brown's plan would have had an adverse effect on three employees in Risk Management, all of whom were African American. However, only Plaintiff's position was actually eliminated as part of the reorganization. Plaintiff has not attempted to show how any of the non-protected employees who retained their jobs after the reorganization were similarly situated to Plaintiff in all relevant respects. Plaintiff appears to argue that she and Moseley were similarly situated employees because they both prepared CARB reports and both worked in the Risk Management department under Brown's supervision.

Plaintiff's comparison to Moseley is misplaced. Plaintiff's argument about Moseley conflates two alternative showings she can make to satisfy the fourth element of her prima facie case: that she was replaced by a non-protected employee or that she was treated differently than a similarly situated, non-protected employee. Plaintiff's burden is to show that Defendant treated a comparator employee more favorably by deciding to eliminate Plaintiff's job but not the comparator's. Moseley was not even an AutoZone employee at the time Brown proposed to reorganize the Risk Management department. Plaintiff's job was eliminated in September 2013, and Moseley was initially hired at AutoZone in November 2013.[37] Plaintiff cannot show then that she and Moseley were similarly situated or that Defendant treated Moseley more favorably by proposing to eliminate Plaintiff's job while keeping Moseley. As a result, Plaintiff has failed to prove the fourth element of her discrimination claims. Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's race and age discrimination claims.

---

[37] Plaintiff notes the evidence that Moseley's employment application listed his preferred start date as a mere ten days after Plaintiff's termination. Plaintiff apparently relies on this fact to support her claim that Moseley was her replacement. Plaintiff has not shown why Moseley's preferred start date is relevant in this case because Moseley did not start his employment with AutoZone until November 2013. Even if the proof had shown that Defendant had identified Moseley for the new position in the Risk Management department before Plaintiff's job was eliminated, the fact would remain that Moseley took over only one of Plaintiff's duties, the preparation of the CARB report, and therefore was not her replacement.

## CONCLUSION

The Court holds that no genuine issues of material fact remain for trial and that Defendant is entitled to judgment as a matter of law on each of Plaintiff's causes of action. Therefore, Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  August 30, 2016.